UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KORTNEY G.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,[2]<br>Commissioner of Social Security,<br><br>Defendant. | CASE NO. 3:25-CV-00051-SJF |

**OPINION and ORDER**

Plaintiff Kortney G. ("Ms. G") seeks judicial review of the Social Security Commissioner's decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). The parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) on April 10, 2025. [DE 10]. Accordingly, this Court now enters a ruling pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. §405(g).

For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

**I.     OVERVIEW OF THE CASE**

Ms. G applied for DIB and SSI on April 6, 2022. In her applications, she alleged a disability onset date of December 28, 2020. Ms. G's applications were denied initially on

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Frank Bisignano was sworn into the office of Commissioner of Social Security on May 7, 2025, and he is substituted as Defendant in his official capacity as Commissioner.

August 12, 2022, and upon reconsideration on January 30, 2023. Ms. G filed a written request for hearing on February 10, 2023. Following a telephone hearing on August 17, 2023, the Administrative Law Judge ("ALJ") issued a decision on November 28, 2023, which affirmed the SSA's denial of benefits.

On November 21, 2024, the Appeals Council denied Ms. G's request for review of the ALJ's unfavorable decision, making the ALJ's decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Ms. G then timely filed this action on January 17, 2025. Ms. G filed her opening brief on April 11, 2025, and the Commissioner filed his Memorandum in Support of Decision on June 12, 2025. This matter became ripe on June 26, 2025, without any reply filed by Ms. G.

## II. APPLICABLE STANDARDS

### A. Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3)

2

whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520; 416.920.[3] The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.    Standard of Review

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

3

administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). On the other hand, "[a]n award of benefits is appropriate only where all

4

factual issues have been resolved and the record can yield but one supportable conclusion.: *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III. DISCUSSION

#### A. Summary of the ALJ's Decision Denying Benefits

Ms. G's telephone hearing before the ALJ took place on August 17, 2023. Ms. G appeared telephonically with an attorney representative. (*See* Administrative Record 23, 54) (hereinafter "AR"). On November 28, 2023, the ALJ issued a written decision finding that Ms. G was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. The ALJ determined that Ms. G had not engaged in substantial gainful activity since her alleged onset date of December 28, 2020. (AR 25).

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ found that Ms. G suffers from the following severe impairments: morbid obesity, degenerative changes of the lumbar spine, degenerative changes of the cervical spine, thoracic spondylosis, chronic pain syndrome, chondromalacia, anxiety, and degression (AR 26). On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20

5

C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that Ms. G suffers from the non-severe impairments of vision impairment, migraines, and ocular stroke. (AR 27).

At Step Three, the ALJ determined that none of Ms. G's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 29). The ALJ considered Listings 1.15, 1.16, 1.18, 12.04, 12.06 and SSR 19-2. (AR 29-30). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. G can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ found that Ms. G has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) but with certain additional limitations:

> The claimant is limited to lifting, carrying, pushing and pulling 10 pounds frequently and occasionally. She can sit for six hours in an eight-hour workday, and she can stand and/or walk for two hours in an eight-hour workday. She should not climb ropes, ladders, or scaffolds. She can occasionally kneel, crouch, and crawl. She can occasionally bend and stoop. She can occasionally use ramps and stairs. The claimant should not work upon even surfaces. She should avoid working upon wet and

>slippery surfaces. She can perform the balance required of such activities. She should not perform work at exposed heights and open and dangerous machinery, such as those with fast moving and exposed blades and open flames. In order to look to the far right, the claimant must turn the head to the far right. The claimant is limited from complex tasks. She can perform simple, routine tasks and instructions throughout the workday. She can have frequent interactions with others. She can accept instruction, criticism and direction from the supervisor. Workplace changes should be gradual and expected. She can respond or adapt to the changes, cope with the stress, and engage in the decision making required of such tasks. With such limitations in place, the claimant can maintain the concentration, persistence, adaptation, and even the pace required of such tasks for two-hour increments, for eight-hour workdays, within the confines of normal workplace breaks and lunches, on a sustained day-to-day basis.

(AR 32). Given these restrictions, at Step Four, the ALJ determined that she could not perform her past relevant work as a groomer or store laborer. (AR 43-44). Accordingly, the ALJ moved on to the last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in significant numbers. 42 U.S.C. § 423(d)(2)(A). ALJs typically enlist a vocational expert ("VE") to testify about which occupations, if any, a claimant can perform. *See* S.S.R. 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). VEs use information from the Dictionary of Occupational Titles ("DOT") and their professional experience to inform their assessments of a claimant's ability to perform certain types of work. *See* S.S.R. 24-3p. Here, the VE identified three representative jobs that Ms. G could still perform with her RFC—document preparer, electronic assembly, and table worker—which, respectively, have 59,000 jobs nationally, 85,000 jobs nationally, and 115,000 jobs nationally. (AR 45)

7

Finding that Ms. G could make an adjustment to other work that existed in significant numbers, the ALJ determined that Ms. G was not under a disability, as defined in the Act, from her alleged onset date through the date of ALJ's decision.

### B. Issue for Review

Ms. G contends that the ALJ failed to properly develop the record and obtain a medical opinion about her mental impairments. Ms. G argues that two of the three State agency psychological consultants found that there was insufficient information to form an opinion about her mental limitations, and the State agency psychological consultant who did render an opinion did not review 100 pages of evidence submitted thereafter. Thus, Ms. G contends that the ALJ should have ordered a consultative examination to fully develop the record concerning Ms. G's mental health limitations, and failing to do so requires remand.

In response, the Commissioner contends that an additional consultative examination was unnecessary for two reasons: first, the Commissioner maintains that the psychologist who rendered an opinion reviewed the bulk of Ms. G's medical records provided the ALJ with enough information to make a decision; and second, Ms. G's additional medical records did not provide new information about Ms. G's mental health that could have changed the psychologist's opinion. The Commissioner also argues that the Court should defer to the ALJ's assessment of the doctors' reports.

### C.     Analysis

The ALJ first determined that Ms. G's anxiety and depression were severe impairments. (AR 26). Then, at Step Three of the analysis, the ALJ considered whether Ms. G's depression or anxiety met any Listing. To make this finding, the ALJ rated[4] the degree of functional limitation in four broad areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). These functional areas are known as the "Paragraph B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq. When analyzing the Paragraph B criteria, the ALJ must incorporate "a specific finding as to the degree of limitation in each of the functional areas." *Id.*; *see also Craft*, 539 F.3d at 674–75; *Timothy H. v. Kijakazi*, No. 20 C 581, 2022 WL 4079433, at *3 (N.D. Ill. Sept. 6, 2022). The ALJ's analysis must cite evidence that supports his conclusion for each functional area. *Timothy H.*, 2022 WL 4079433, at *3. To satisfy the paragraph B criteria, the claimant must establish "extreme" limitation of one, or "marked" limitation of two, of the four functional areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.00(A)(2)(b).

Here, the ALJ found that Ms. G's impairments caused a moderate limitation in each of the four of the functional areas. As part of this discussion, the ALJ acknowledged Ms. G's statements that "she does 'ok' with written instructions" that are not complicated and that she cannot follow verbal instructions; that she needs reminders to take her medicine; that she can "lash[] out" when overstimulated; that she

---

[4] These functional areas are rated on a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

9

avoids crowds due to panic attacks; that she had difficulty concentrating; that she is unable to handle stress or changes in routine; and that she "has constant anxiety." (AR 30-31). But the ALJ also noted that, despite these allegations, a neurological evaluation in December 2021 showed normal comprehension. Moreover, the ALJ noted that a mental status exam from 2022 revealed that Ms. G's cognition was in normal limits and that her thought content was normal, with good judgment and insight. The ALJ also noted that she showed appropriate behavior and was cooperative during this latter evaluation. (*Id.*)

The ALJ next discussed medical evidence regarding Ms. G's mental limitations as part of the RFC determination. The ALJ considered 2022 reports from the Bowen Center, where Ms. G received a diagnosis for generalized anxiety disorder and major depressive disorder, and was treated with skills training. (AR 36.) The ALJ also referenced visits in April and May of 2022, where Ms. G was "not very engaged" and appeared overwhelmed and irritated. (AR 37). The ALJ also acknowledged Ms. G's reports in June and July of 2022 about her anxiety, not sleeping well, and being in a "manic state." (*Id.*). Still, the ALJ also noted that during later visits, Ms. G reported that her anxiety was down, she showed average eye contact, a cooperative attitude, full affect, clear speech, and logical thought process. (*Id.*) A November 2022 psychiatric exam also "revealed normal mood, behavior, thought content, and judgment." (*Id.*)

Thus, the ALJ stated that the "facts do not reflect or support, and are inconsistent with, allegations for limitations of function greater, lasting twelve months in duration, than those within the residual functional capacity." (*Id.*) The ALJ specifically concluded

10

that the evidence does not support Ms. G's alleged level of memory issues based on exams showing normal comprehension and intact recall, as well as Ms. G's abilities to handle money. (AR 41). The ALJ also found that Ms. G's "alleged issues with constant anxiety, panic, avoidance of crowds, and isolation are not generally consistent with the medical evidence." (*Id.*) The ALJ highlighted Ms. G's ability to functionally interact with the medical providers, display "normal thought content, intact insight, and judgment," concentrate on tasks given to her, and her ability to develop new relationships as being inconsistent with her self-reported symptoms. The ALJ also noted that Ms. G has never had formal psychological or psychiatric medical treatment outside her skills training through the Bowen Center. (*Id.*)

The ALJ also considered the opinions of three psychological consultants and two medical doctors in the decision. Three of the opinions—those from Dr. J.V. Corcoran, M.D. (a State agency medical consultant); Dr. Maura Clark, Ph.D. (a State agency psychological consultant); and Dr. Joelle Larsen, Ph.D. (a State agency psychological consultant)—all found insufficient evidence to form an opinion. On the other hand, Dr. J. Gange, Ph.D. (a State agency psychological consultant) did not find insufficient evidence and rendered an opinion based on the available evidence.

Dr. Clark found[5] that there were no medically determinable impairments because "Claimant refused to cooperate with the request to provide information and the

---

[5] The date on Dr. Clark's review is listed as April 21, 2021, which is before the date Ms. G applied for DIB and SSI here. The Commissioner's response clarifies that Dr. Clark considered Ms. G's mental functioning in connection with an earlier-filed application for benefits, where there was no medical evidence available [DE 15 at 10, fn. 5].

determination made is based on evidence in file." (AR 96-97.) Dr. Gange opined on August 6, 2022, that Ms. G "can understand, remember, and carry out detailed, but not complex tasks. [She] can relate on a superficial and ongoing basis with co-workers and supervisors. [She] can attend to tasks for a sufficient period to complete tasks. [She] can manage the stresses involved with detailed work related tasks." (AR 43, AR 108). The ALJ acknowledged that Dr. Gange rendered this opinion based on "findings that were grossly within normal limits, other mental status exams, which were similarly normal, and a variety of alleged symptoms or subjective complaints." (AR 43, citing AR 107-08). Dr. Larsen's opinion, dated January 17, 2023, stated that "Clmt and rep have failed to respond to calls/letters needing treatment information. Insufficient evidence to assess the claim." (AR 134-135.) Dr. Corcoran's opinion, dated January 30, 2023, likewise found that there was insufficient evidence because "Clmt and rep have failed to respond to calls/letters needing treatment information. Insufficient evidence to assess the claim." (AR 133.)

The ALJ determined that the opinions from Dr. Corcoran, Dr. Clark, and Dr. Larsen—which found insufficient evidence—to be unpersuasive, stating that there is sufficient evidence to evaluate Ms. G's claim. (AR 42-43). The ALJ then found Dr. Grange's prior administrative finding to be "somewhat persuasive." The ALJ found Ms. G to have "somewhat greater mental functional limitations" than what Dr. Gange's opinion suggested. (AR 43). To support the assessment of greater RFC limitations, the ALJ pointed to Ms. G's treatment notes from Warsaw Neurology and the Bowen Center. (AR 43, citing Exhibits 22F; 24F/4, 21-22, 33, 82-91).

12

"[T[he ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal citations omitted). Here, Ms. G contends that the record was not full and fair because the ALJ should have ordered another consultative psychological examination. First, she relies on Dr. Larsen's later-rendered opinion finding that there was insufficient evidence; and second, she argues that the 100 pages of medical records submitted after Dr. Gange issued an opinion renders the opinion out of date. [DE 11 at 11-14].

"A consultative examination is a physical or mental examination or test purchased for [a claimant] at [SSA's] request and expense from a treating source or another medical source." 20 C.F.R. § 416.919. A consultative examination may be ordered when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. § 416.919a(b). "The ALJ is not *required* to order such examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner*, 478 F.3d at 844 (citing 20 C.F.R. §§ 416.912(f), 416.917). Put another way, "[a] consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). Decisions about the completeness of the record and whether to order a consultative examination are in the ALJ's discretion. *See Skinner*, 478 F.3d at 844.

As Ms. G alleges, Dr. Larsen did state that there was "Insufficient Evidence" to assess mental limitations, but this statement was made because "Clmt and rep have

failed to respond to calls/letters needing treatment information." (AR 134-135.) Thus, Dr. Larsen found the medical evidence insufficient not because of any ambiguity in the record, but because Ms. G had failed to respond with medical records. The Court cannot find that this statement demonstrates that there was ambiguity in the evidence that would require a consultative examination. Moreover, when analyzing the persuasiveness of Dr. Larsen's opinion, the ALJ specifically stated that it was not persuasive because the ALJ found that there was sufficient evidence in the record. *See Miranda M. v. O'Malley*, No. 1:24-CV-00333-MPB-MKK, 2024 WL 5159611, at *7 (S.D. Ind. Nov. 27, 2024), *report and recommendation adopted,* No. 1:24-CV-00333-MPB-MKK, 2024 WL 5155735 (S.D. Ind. Dec. 18, 2024)(affirming where ALJ explained that she found the evidence sufficient to evaluate the claimant's impairments).

Ms. G also attended her telephonic administrative hearing on August 17, 2023, with counsel. "[I]n counseled cases, the burden is on the claimant to introduce some objective evidence that further development of the record is required." *Poyck,* 414 F. App'x at 861. (internal citation omitted). Here, the ALJ asked whether more records were needed, and Ms. G's counsel identified "two outstanding possible records" from the Bowen Center and Parkview Physicians Group Pain Management (AR 56). Despite this discussion about additional records, her counsel did not request another consultative examination, state that the record was incomplete or that further evidence was needed, or that another examination was necessary because three medical opinions stated that there was insufficient evidence. (*See* AR 84 "I mean, Judge, I don't think I have anything else that's going to shed anymore light here really. So I have no

additional questions."); *see also Whitaker v. King*, No. 24-CV-555-SCD, 2025 WL 501865, at *4-*5 (E.D. Wis. Feb. 14, 2025).

Ms. G also contends that because additional medical records were added after Dr. Gange issued an opinion, Dr. Gange's opinion should have been considered stale or unpersuasive. Medical opinions are considered outdated when there is "new, significant medical diagnoses [that] reasonably could have changed the reviewing [psychologist's] opinion." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066-67 (7th Cir. 2023) (internal citation omitted). Ms. G does not point to any significant diagnoses or other information in these records that would have changed Dr. Gange's opinion, despite it being her burden to do so. *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025)(internal citations omitted). Moreover, the Court's review shows that while later records continue to acknowledge Ms. G's mental health diagnoses and reported limitations as she worked with her skills coach (AR 699, 930), most of these records discuss Ms. G's physical impairments rather than her mental impairments. (AR 722-62, 779-800.) Moreover, the records show that Ms. G's behavior, thought content, and judgment were found to be normal or otherwise unremarkable. (AR 943-44; AR 789). Thus, the Court's review of additional records yields no new or significant diagnoses. Without more from Ms. G to support her arguments, the Court cannot find that records added after Dr. Gange's review require remand for further proceedings.

In sum, Court generally defers to the ALJ to determine the quantity of evidence needed to develop the record. The ALJ supported his decision that there was sufficient evidence in the record. Without more from Ms. G, the Court cannot find that the ALJ

15

needed to order another consultative examination or otherwise failed to develop the record. This is bolstered by the ultimate RFC assessed by the ALJ, which was more restrictive than the RFC assessed by Dr. Gange. This further accommodation suggests "reasoned consideration given to the evidence." *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Accordingly, the Court cannot find that the ALJ erred such that remand would be appropriate.

### IV.  CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 3rd day of February 2026.

s/Scott J. Frankel  
Scott J. Frankel  
United States Magistrate Judge